IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUIS GONZALEZ, | § | |
| Movant, | § | |
| | § | |
| v. | § | A-14-CV-586-LY |
| | § | (A-12-CR-084-LY) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Luis Gonzalez's ("Gonzalez") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Dkt. No. 542) and the Government's Response to the Motion (Dkt. No. 547). The undersigned Magistrate Judge submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. GENERAL BACKGROUND**

On March 6, 2012, Gonzalez was one of 15 defendants indicted for conspiracy to posses with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846. Dkt. No. 1. On July 25, 2012, Gonzalez entered a formal guilty plea to the charged offense, pursuant to a written plea agreement. Dkt. Nos. 314; 300. On October 30, 2012, the Court sentenced Gonzalez to a 324 month term of imprisonment, followed by a five year term of supervised release, and ordered that Gonzalez pay a $100 special mandatory assessment. Dkt. No. 547-6 at 25-26.

On November 13, 2012, Gonzalez filed a notice of appeal. Dkt. No. 450. On September 4, 2013, the Court of Appeals affirmed Gonzalez's conviction in a written opinion. Dkt. No. 532. The court noted that Gonzalez had knowingly and voluntarily waived his right to appeal, and the waiver extended to his claims of ineffective assistance of counsel. *Id.* at 1-2. It further determined that to the extent those claims survived his waiver, it would not address the claims on direct review as the factual record had not been sufficiently developed. *Id.* at 2.

On June 30, 2014, Gonzalez filed the instant motion, again raising the claim he was denied effective assistance of counsel. Dkt. No. 542. The Government filed a response to the motion on August 20, 2014. Dkt. No. 547. Though on September 10, 2014, the Court granted Gonzalez a 45 day extension of time to file a reply, Dkt. No. 549, he never filed one.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice."

*United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996). Finally, a defendant may waive his statutory right to file a § 2255 motion, if the waiver is knowing and voluntary. *United States v. McKinney*, 406 F.3d 744, 746 (2005).

### III. ANALYSIS

Gonzalez argues that he was denied the effective assistance of counsel because Flores: (1) failed to fully investigate his case; and (2) manipulated him into signing a plea agreement unknowingly, unintelligently, and involuntarily, by promising him he would receive a seven year sentence.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)). This same two-part standard applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhard*, 474 U.S. 52, 57 (1985). Therefore, the movant has the burden of proof and of persuasion to establish that a reasonable probability exists that but for his counsel's ineffectiveness, he "would not have pleaded guilty and would have insisted on going to trial." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987) (quoting *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987)).

A.  **Alleged Failure to Investigate**

Gonzalez alleges that a full investigation was not done because Flores did not object to the quantity of cocaine attributed to him . He contends that if Flores had inquired into the validity of the presentence report, he would have uncovered that Gonzalez was responsible for less than 50 kilograms of cocaine, which would have reduced his sentencing range under the Guidelines.

This claim has no merit. First, the claim is inconsistent with all of the relevant evidence in the record, including Gonzalez's own statements. For example, in the signed plea agreement, which Gonzalez reaffirmed during his guilty plea, the Government set out in writing the factual basis which it claimed supported the plea. In a jurat above his signature, Gonzalez stated that "I admit that all of the facts contained in the Factual Basis are true and correct, and that I am guilty of the offense to which I am pleading guilty." Dkt. No. 300 at 13. Under oath at the plea hearing he stated:

> THE COURT: Now, in each of your plea agreements, there's a section of the plea agreement where the government sets out what it contends it would have proven had there been a trial. And

|               |                                                                                                                                                                                    |
|---------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|               | each of you, as part of signing the agreement, accepted that as correct. Let me just confirm that. Did you read over or have that translated for you that section of the plea agreement, the factual basis? |
| L. GONZALEZ:  | Yes.                                                                                                                                                                               |
| THE COURT:    | And is that summary correct as to what happened in the case and as to what you did?                                                                                                |
| L. GONZALEZ:  | Yes.                                                                                                                                                                               |

Dkt. No. 489 at 24.[1] Among other things, the written factual basis stated that Gonzalez "routinely received multi-kilogram quantities of cocaine from Luis Armas, Noe Lopez, and others." *Id.* at 10. The factual basis then gave what were referred to as "examples" of Gonzalez's activity in the conspiracy, and described just four transactions, which alone involved a combined total of 20 kilograms of cocaine. *Id.* at 10-11. At the sentencing hearing, Judge Yeakel noted that there were 337 intercepted phone calls in which Gonzalez was identified discussing cocaine trafficking. Dkt. No. 490 at 23. Flores submitted an affidavit with the Government's response in which he swears that he reviewed all of the discovery in the case, which included these recorded conversations. Dkt. No. 547-3 at 2. Gonzalez repeatedly makes statements that had Flores done more investigation, he would have been able to prove that the 150 kilogram figure was incorrect, but he never states what evidence would have demonstrated this, nor does he offer anything to contradict the evidence that was before the Court on this issue. In effect, Gonzalez does no more than baldly assert that the evidence would have supported a smaller amount of cocaine than 150 kilograms. Because he offers no proof of this, and the record reflects otherwise, this claim has no merit.

---

[1] Gonzalez's plea was taken along with other defendants, and in quoting from it here and below, the Court only includes Gonzalez's answers at the rearraignment.

Moreover, the assertion that because Flores did not investigate this issue, he was unable to effectively object to the 150 kilogram relevant conduct amount is also baseless. Flores in fact raised this very issue, and argued that Gonzalez should only be held accountable for 13 kilograms of cocaine, as there was insufficient evidence to support a larger quantity. Dkt. No. 547-6 at 11. Flores also objected to the four level increase in Gonzalez's sentencing guidelines for acting as a leader/organizer of the conspiracy, arguing that Gonzalez was an average participant in the conspiracy. *Id.* at 14. The Court, however, overruled both of these objections, not because Flores did a poor job arguing them, but because the evidence gathered in the Government's extensive investigation contradicted the claim. Dkt. No. 547-6 at 13 and 15.[2] As mentioned, the Government had 337 recordings in which Gonzalez was discussing cocaine trafficking. In sum, just because Flores did not prevail on these arguments does not mean his performance was deficient—as the Supreme Court has noted, "the Sixth Amendment does not require that counsel do what is impossible." *Chronic v. United States*, 466 U.S. 648, 656 n. 19 (1984).

### B.  **Voluntariness of the Plea**

Gonzalez next argues that (1) Flores was deceptive and manipulative in representing him, (2) his plea was made unknowingly and involuntarily, (3) he was induced by a promise of a seven

---

[2]In his affidavit in support of his motion Gonzalez makes other baseless claims on this point. For example, he contends that Flores did not "prepare any objections to the Pre-Sentence Report." Dkt. No. 542-1 at 7. In fact, Flores *did* file objections to the PSR. *See* Dkt. No. 552 at 20-22. Those objections were mentioned, argued, and ruled on at the sentencing hearing. Dkt. No. 490 at 11-16. Gonzalez also asserts that "Attorney Flores did not object or challenge the credibility of the informants in the case." Dkt. No. 542-1 at 7. Again, this is untrue. As part of his objections at sentencing to the relevant conduct figure of 150 kilograms, Flores argued that the informants' claims on this issue were not credible, because they "gave them this information, obviously, to benefit themselves," and "[w]e believe the informant bolstered a lot of information regarding Mr. Gonzalez as well." Dkt. No. 490 at 15.

year sentence to plead guilty, and (4) he was not informed of the amount of cocaine that would be attributed to him.  Once again, Gonzalez's own sworn testimony dooms these claims.

Gonzalez first claims that Flores was deceptive and manipulative and coerced him to sign a plea agreement that was not explained to him.  Gonzalez's statements under oath during the plea hearing contradict this claim. During the plea hearing, the Court engaged the defendant in the following colloquy:

> THE COURT: Now, have each of you had enough time to meet with your attorney and to speak to him about your case?
>
> L. GONZALEZ: Yes.
>
> THE COURT: And have you had enough time to -- or have you taken the opportunity to speak with your attorney about anything that you think he needs to know about you or about your case so that he can do good job representing you?
>
> L. GONZALEZ: Yes.
>
> THE COURT: And are you satisfied with the representation that you've received from your attorney?
>
> L. GONZALEZ: Yes.

Dkt. No. 489 at 7.  The Court then had the prosecutor summarize the terms of the plea agreement. Immediately following the summary, the Court asked:

> THE COURT: Thank you. Gentlemen, you've heard Ms. Cottingham summarize the terms of your plea agreements. As she noted, the full text of each of the agreements is set out in writing. You've signed that. Your attorney has signed that as well. Before you signed your plea agreement, did you either read it yourself or have it translated for you into Spanish?
>
> L. GONZALEZ: Yes.

| | | |
|---|---|---|
| THE COURT: | | . . . Now, did you also meet with your attorney and discuss your plea agreement with your attorney before you signed it? |
| L. GONZALEZ: | | Yes. |
| THE COURT: | | And do you understand your plea agreement? |
| L. GONZALEZ: | | Yes. |

*Id.* at 10.  Later in the proceedings, immediately after Gonzalez entered his plea of "guilty" to the charge against him, the Court asked:

| | | |
|---|---|---|
| THE COURT: | | Are you making that plea of guilty freely and voluntarily? |
| L. GONZALEZ: | | Yes, sir. |
| THE COURT: | | Has anyone threatened you or forced you in any way to make you plead guilty? |
| L. GONZALEZ: | | No. |
| THE COURT: | | And has anyone –other than what the government's agreed to do in the plea agreement, has anyone promised you anything that's caused you to plead guilty? |
| L. GONZALEZ: | | No. |
| THE COURT: | | Has anyone made any promise or prediction to you about what your sentence will be? |
| L. GONZALEZ: | | No. |

*Id.* at 23-24.  In short, everything Gonzalez said at his guilty plea indicated that he was acting knowingly and voluntarily, and is inconsistent with his claim that his attorney coerced him into saying otherwise during the proceedings.

"[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1987).  Moreover,

"solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). In an attempt to overcome this hurdle, Gonzalez contends that he answered questions at his rearraignment inaccurately because of "the psychological coercion and duress Attorney Flores placed me under." Dkt. No. 542-2 at 5. In the affidavit attached to his motion, Gonzalez describes his answers at the plea proceedings as follows:

> 48.) Every time the Magistrate Judge asked me a question I looked at Attorney Flores and he would either nod or shake his head as to tell me what to say.
>
> 49.) My son Ivan Gonzalez, my sister Yesenia Gonzalez, the interpreter on my table and the prosecutor saw this interaction between Attorney Flores and me.[3]
>
> 50.) I did not answer the questions myself because I did not want to jeopardize receiving the promise Attorney Flores had assured me of, that being that if I went along with what he wanted me to say I would receive a sentence of 7 years.
>
> 51.) I did not answer the questions knowingly or voluntarily due to the psychological coercion and duress Attorney Flores placed me under before I signed the plea agreement in the courtroom and detention center.
>
> 52.) I followed Attorney Flores's advice and answered the questions the way I did because I trusted him to keep the promises he made to me.
>
> 53.) The Magistrate Judge saw the interaction between Attorney Flores and me, knew that I was not answering the questions being asked independently but disregarded his duty to make sure that I understood the questions and did not just let the attorney answer for me.

Dkt. No. 541-1 at 5. Because the undersigned presides over hundreds of guilty pleas in a year, and this plea took place more than two-and-a-half years ago, I do not have a memory of these proceedings. I did, however, listen back to the audio recording of the proceedings, and there are no pauses prior to Gonzalez's answers, which is inconsistent with this claim. Further, if the Court had

---

[3]The motion does not contain any affidavits from Gonzalez's son or sister confirming this claim.

witnessed at a plea proceeding anything like what Gonzalez describes in his affidavit, the Court would have interrupted the proceedings and made inquiries to assure the defendant understood the proceedings, and was answering independently. No such interruption is reflected in the transcript of the plea, further undermining Gonzalez's claim.

Gonzalez also claims that Flores promised him a seven year sentence, which is directly contradicted by several of Gonzalez's statements at the guilty plea. As noted earlier, Gonzalez directly denied that anyone had "forced him in any way" into pleading guilty, and denied that anyone had promised him anything to make him plead guilty. Dkt. No. 489 at 23-24. He also denied that anyone had made any promise or prediction about what his sentence would be. *Id.* His written plea agreement—which he swore had been translated into Spanish for him—contained this jurat immediately above his signature:

> I, Luis Gonzalez, have carefully read and reviewed the foregoing plea agreement in its entirety. After giving careful and mature consideration to the making of this plea agreement, thoroughly discussing the plea agreement with my attorney, fully understanding my rights with respect to the pending criminal charge, and in reliance upon my own judgment and the advice of my attorney, I freely and voluntarily agree to the specific terms and conditions of the plea agreement.

Dkt. No. 300 at 14. The first page of the agreement stated that the *minimum* sentence available to him was ten years of imprisonment, three years above what he claims his attorney promised him. *Id.* at 1. The Court advised him of the same, and he twice swore he understood that. Dkt. No. 489 at 15-16, 17-18. He never objected or asked questions about it, despite being given that opportunity. *Id.* at 3, 17. Finally, in bold on page 8 of the plea agreement, it states:

> **Any prediction or estimate of the probable sentencing range or ultimate sentence that may be imposed, whether from the government, her attorney, or the Probation Office, is not a promise, is not binding, and is not an inducement for the Defendant's guilty plea or waivers. The Defendant will not be permitted**

>**to withdraw his guilty plea because the sentence imposed differs from the sentence she expected or hoped for.**

*Id.* at 8. Gonzalez's sworn statements at his rearraignment "constitute a formidable barrier in any subsequent collateral proceedings." *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000). Gonzalez has failed to surmount this formidable barrier, both as to the alleged coercion of his counsel and as to the supposed promise of a seven year sentence.

Finally, Gonzalez argues that he was not informed until shortly before his sentencing hearing that he would be held responsible for 150 kilograms or more of cocaine as his "relevant conduct" for sentencing guideline purposes. Dkt. No. 542-1 at 6. Not only does the record belie this claim, but the very affidavit Gonzalez submitted with his motion is inconsistent with this claim. Gonzalez states that when Flores first presented him the plea agreement, Flores told him "the government wanted to hold me responsible for 150 kilograms or more of cocaine." Dkt. No. 542-1 at 3. This meeting at the jail took place *before* the rearraignment on July 25, 2012. Gonzalez was not sentenced until October 30, 2012. Thus, Gonzalez's own testimony admits that his attorney made him aware of the Government's position on relevant conduct at least three months before sentencing. Moreover, at sentencing, Gonzalez admitted that he had received and reviewed the presentence report—which included the 150 kilogram figure—a week to a week-and-a-half before the sentencing hearing. Dkt. No. 490 at 8-9. As with the other claims, this assertion is inconsistent with the evidence before the Court, and Gonzalez's own sworn testimony, and is therefore baseless.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Movant Luis Gonzalez's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 be **DENIED**.

## V. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## VI. CERTIFICATE OF APPEAL

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

SIGNED this 16th day of June, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE